PEARSON, MJ

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| ROBERT J. ANDREWS | ) | CASE NO.  5:09-CV-02117 |
| | ) | |
| Plaintiff, | ) | JUDGE JOHN R. ADAMS |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | BENITA Y. PEARSON |
| MICHAEL J. ASTRUE, Commissioner of | ) | |
| Social Security, | ) | |
| | ) | |
| Defendant. | ) | **REPORT AND RECOMMENDATION** |

Plaintiff Robert J. Andrews ("Andrews") seeks judicial review of the Social Security

Administration's ("Agency" or "Commissioner") final decision denying his application for

Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") pursuant to 42

U.S.C. § 405(g).[1]                    **I. Overview**

Andrews alleges disability due to physical impairments resulting from an enlarged left

ventricle, a thirty-percent fraction of blood from the ventricles, shortness of breath, and heart

disease.  (Tr. 172 & 185.)  At age forty-nine, Andrews, a high school graduate with work

experience in the auto industry as a manager, tow truck driver, and tire changer, qualified as a

_____

[1]  The matter was referred to the undersigned Magistrate Judge for issuance of a Report
and Recommendation.  ECF No. 6.

(5:09-CV-02117)

"younger person."[2]  (Tr. 21, 96, 135, 139, 259.)  Although the Administrative Law Judge ("ALJ")

found that Andrews had several impairments, he determined that Andrews was not disabled

because (1) he "did not have an impairment or combination of impairments that met or medically

equaled one of the listed impairments;" (2) he could perform sedentary unskilled work; and (3)

he is "capable of making a successful adjustment to other work that exists in significant numbers

in the national economy."  (Tr. 16, 17, 22.)

After reviewing the administrative record including medical records, testimony, and

relevant legal authority, the Court finds that the ALJ's decision is based upon properly applied

legal standards supported by substantial evidence.  For the reasons that follow, the undersigned

recommends affirming the Agency's final decision that Robert J. Andrews was not entitled to

Disability Insurance Benefits or Supplemental Security Income.

## II.  Procedural History

Andrews filed an application for DIB and SSI benefits on November 27, 2006, alleging

disability onset on November 22, 2006.  (Tr. 102.)  The Agency denied Andrews' claim initially

and upon reconsideration.  In response to Andrews timely request for a hearing, an ALJ

conducted an administrative hearing on March 13, 2008, at which Andrews, his counsel, and a

vocational expert appeared.  (Tr. 24.)  After the ALJ denied his request for benefits, Andrews

requested an administrative review of the hearing decision.  The Appeals Council denied

_____

[2]  According to 20 C.F.R. § 404.1563(c), "[i]f you are a younger person (under age 50),
we generally do not consider that your age will seriously affect your ability to adjust to other
work . . . in some circumstances, we consider that persons age 45-49 are more limited in their
ability to adjust to other work than persons who have not attained age 45."

(5:09-CV-02117)

Andrews' request for review, making the ALJ's decision on August 7, 2008, the Agency's final

decision.  Seeking judicial review of the Agency's final decision, Andrews timely filed a

Complaint[3] presenting the following issues:

> (1)     Whether the ALJ failed to follow the requirements of SSR 96-2p and 20 C.F.R. § 404.1527(d)(2) in not awarding controlling weight to treating cardiologist Dr. Pollner's opinions; and

> (2)     Whether the ALJ failed to meet his burden at Step Five of the Sequential Evaluation in finding that Andrews was capable of performing jobs that exist in significant number in the regional and national economies.

ECF No. 12 at 8-10.[4]

### III.  Judicial Review of a Final Agency Decision

Judicial review of the ALJ's decision denying disability benefits is limited to determining

whether there is substantial evidence to support the denial decision and whether the Secretary

properly applied relevant legal standards.  *Brainard v. Sec'y of Health and Human Servs.*, 889

F.2d 679, 681 (6th Cir. 1989) (citing *Richardson v. Perales*, 402 U.S. 389 (1971).  Under 42

U.S.C. § 405(g), the findings of the ALJ are conclusive if they are supported by substantial

evidence.  "Substantial evidence" is "more than a scintilla of evidence, but less than a

preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to

---

[3] Jurisdiction is proper in this Court pursuant to 42 U.S.C § 405(g) because Andrews moved from Dover, Delaware to Tallmadge, Ohio following the administrative hearing and now resides in this judicial district.

[4] Although Andrews has other impairments such as hyperlipidemia, impaired fasting glucose, gastroesophageal reflux disease and depression, he based his disability application on the limitations resulting from his cardiomyopathy.  Andrews conceded that his mental health does not impair his ability to work and made no objection to ALJ's finding that his past alcohol abuse was no longer an issue.

(5:09-CV-02117)

support a conclusion." *Cutlip v. Sec'y of Health and Human Servs.,* 25 F.3d 284, 286 (6th Cir. 1994).

In determining the existence of substantial evidence, the reviewing court must examine the administrative record as a whole.  *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535, 536 (6th Cir. 1981); *Heston v. Comm'r of Soc. Sec.,* 245 F.3d 528. 535 (6th Cir. 2001). The ALJ's decision must be affirmed if it is supported by substantial evidence even if the reviewing court would have decided the matter differently, and even if substantial evidence also supports a different conclusion.  *See Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986).  "Even if supported by substantial evidence, however, a decision of the Commissioner will not be upheld where the [Social Security Administration] fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right."  *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2006).

The substantial evidence standard presupposes that there is a "zone of choice" within which the Agency may proceed without interference from the courts.  *Mullen*, 800 F.2d at 545 (6th Cir. 1986).  The district court may look into any evidence in the record, regardless of whether it has been cited by the ALJ.  *Id.*  The reviewing court, however, may not try the case *de novo*, resolve conflicts in the evidence, or decide questions of credibility.  *See Brainard*, 889 F.2d at 681; *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

(5:09-CV-02117)

## IV.  **Standard for Establishing Disability**

To establish disability under the Act, a claimant must show that he is unable to engage in substantial gainful activity due to the existence of "a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months."  *See* 42 U.S.C. §§ 423(d)(1)(A), 1382(c)(a)(3)(A).  The claimant's impairment must prevent him from doing his previous work, as well as any other work existing in significant numbers in the national economy.  *See* 42 U.S.C. §§ 423(d)(2)(A); 1382c(a)(3)(B).

To determine whether a claimant is disabled, Agency regulations prescribe a five-step sequential evaluation.  If a claimant can be found disabled or not disabled at any step of the sequential evaluation, the review ends.  20 C.F.R. § 404.1520(a).  At Step One, the ALJ considers the claimant's work activity.  A claimant is not disabled if engaged in substantial gainful activity, *i.e.*, working for profit.  At Step Two, the ALJ considers the medical severity of the claimant's impairments.  A claimant is not disabled if she does not have a severe medically determinable physical or mental impairment that also meets the duration requirement in 20 C.F.R. § 404.1509, or a combination of impairments that are severe and meet the duration requirement.  At Step Three, the ALJ determines whether the claimant's impairment meets or equals one of the criteria of an impairment listed in Appendix 1 and meets the duration requirement.  *See* 20 C.F.R. § Part 404, Subpart P, Appendix 1.  A claimant is disabled if she has an impairment that meets the listing and the duration requirement.

-5-

(5:09-CV-02117)

Before considering the fourth step, the ALJ must determine the claimant's Residual Functional Capacity ("RFC"), *i.e.*, the claimant's ability to perform physical and mental work on a sustained basis despite limitations from impairments.  At Step Four, the ALJ considers whether the claimant's RFC permits her to perform past relevant work.

At the final step, Step Five, the ALJ considers the claimant's RFC, age, education, and work experience to determine whether the claimant may work.  Even if the claimant's impairment does prevent her from doing her past relevant work, the claimant is not disabled if other work exists in the national economy that she can perform.  *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990); *see also Barnhart v. Thomas*, 540 U.S. 20, 24-25 (2003) (describing five-step evaluation).

The claimant bears the burden of proof at Steps One through Four. *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004).  *Richardson v. Heckler*, 750 F.2d 506, 509 (6th Cir. 1984) ("A social security disability claimant bears the ultimate burden of proof on the issue of disability.").  This means that claimant bears the ultimate burden of proof regarding the issues of disability and the establishment of a disability onset date.  *See* 20 C.F.R. § 404.1512(a) ("In general, you have to prove to us that you are blind or disabled"); *McClanahan v. Comm'r of Soc. Security*, 474 F.3d 830, 836 (6th Cir. 2006).

At Step Five of the sequential evaluation, the burden shifts to the Commissioner to identify "a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile."  *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003); *see also* 20 C.F.R. § 404.1512(a); *Bowen v. Yuckert*, 482

-6-

(5:09-CV-02117)

U.S. 137, 146 n.5 (1987) ("[T]he Secretary bears the burden of proof at step five, which

determines whether the claimant is able to perform work available in the national economy.").

## V.  Analysis

### A.  The Treating Physician Rule

In assessing the medical evidence provided in support of a claim for disability benefits,

there are certain governing standards or rules that an ALJ must follow.  Among these is the

treating physician rule which requires the ALJ to give a treating source opinion "controlling

weight" if the treating source opinion is "well-supported by medically acceptable clinical and

laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in

[the] case record."[5] 20 C.F.R. § 404.1527(d)(2).

### 1.  Non-Controlling Treating Physician's Opinion

An ALJ's decision to grant a treating physician's medical opinion less than controlling

weight must be accompanied by "good reasons" that are both: (1) supported by the evidence in

the case record, and (2) sufficiently specific to make clear to any subsequent reviewers the weight

the adjudicator gave to the treating source's medical opinion and the reasons for that weight.

SSR. 96-2p.  The ALJ's failure to follow the procedural requirement "of identifying the reasons

for discounting the opinion and for explaining precisely how those reasons affected the weight

accorded the opinions denotes a lack of substantial evidence, even where the conclusion of the

ALJ may be justified based upon the record."  *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 243

---

[5] A physician qualifies as a treating source if the claimant sees her "with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for [the] medical condition."  20 C.F.R. § 404.1502.

(5:09-CV-02117)

(6th Cir. 2007).

In the event that the ALJ does not give controlling weight to a treating physician's opinion, he must still consider how much, if any, weight to give that opinion.  The ALJ makes this determination by considering the following factors:

> (1) the frequency of examination and the length, nature, and extent of the treatment relationship;
> (2) the evidence in support of the treating physician's opinion;
> (3) the consistency of the opinion with the record as a whole;
> (4) whether the opinion is from a specialist; and
> (5) other factors brought to the Social Security Administration's attention that tend to support or contradict the opinion.[6]

20 C.F.R. § 404.1527(d)(2).  *See Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).  Regardless of the weight the ALJ assigns to the opinion of a treating physician, "[t]he determination of disability is [ultimately] the prerogative of the [Commissioner], not the treating physician." *Vance v. Comm'r of Soc. Sec.*, 260 Fed.Appx. 801, 804 (6th Cir. 2008) (quoting *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985)).

### 2. **The Treating Physician Rule as Applied to Andrews' Treating Cardiologist**

Andrews' primary argument is that the ALJ improperly disregarded the opinion of Dr. Pollner, his treating cardiologist.  At the threshold, it is important to note that the ALJ did not reject the treating cardiologist, Dr. Pollner's opinion.  Rather, after considering the entire record, the ALJ found that portions of Dr. Pollner's overall opinion were not supported by substantial

---

[6] Notably, "in all cases there remains a presumption, albeit a rebuttable one, that the opinion of a treating physician is entitled to great deference, its non-controlling status notwithstanding." *Rogers,* 486 F.3d at 242.

(5:09-CV-02117)

evidence, causing the ALJ to give Dr. Pollner's overall opinion less than controlling weight. (Tr. 18-21.) The ALJ gave good reasons for discounting Dr. Pollner's opinion as required by SSR 96-2p and adopted the portion or Dr. Pollner's opinion that the ALJ found to be supported by substantial evidence. (Tr. 18-21.) For the reasons below, the undersigned finds that the ALJ properly considered and assigned appropriate weight to Dr. Pollner's opinion.

### a. Dr. Pollner's Opinions Overall

The record reflects that Dr. Pollner submitted opinion evidence in support of Andrews' applications for benefits from the State of Delaware as well as the Social Security Administration.[7] In consideration of Andrews' application for disability benefits offered through the State of Delaware,[8] Dr. Pollner conclusively certified that Andrews' was totally disabled from performing the duties required in his current or usual occupation as a tow truck driver, as of November 2006, and could not be permitted to perform other full-time work for at least more than twelve months. (Tr. 226, Tr. 227-228 and 244, collectively.) Noting that certifications were prepared in accordance with Delaware State's disability eligibility rules, not those of the Social

---

[7] Dr. Pollner authored at least four documents that reflect his medical opinion. Only one of those documents was primarily prepared for the Social Security Administration--the Cardiac Residual Functioning Capacity Questionnaire. (Tr. 230-233.) The record reflects that the ALJ partially adopted Dr. Pollner's opinion reflected in the Cardiac Residual Functioning Capacity Questionnaire: "that the claimant needs a sit-stand option to be able to perform his residual functional capacity as assigned." (Tr. 20, 232.) The ALJ explained that, "Dr. Pollner concluded that the claimant could walk half a block, stand or walk for less than 2 hours and sit for 4 hours in an 8 hour day. The claimant would require a job that allowed him to alternate between sitting and standing. He would need unscheduled breaks for an hour to sit quietly and his legs should be elevated twice a day for 20 minutes." (Tr. 19.)

[8] *I.e.,* Delaware's Divisions of Unemployment Compensation and Heath and Social Services.

(5:09-CV-02117)

Security Administration, the ALJ assigned "little weight" to Dr. Pollner's Delaware opinions and appropriately cautioned that "regardless of the [Delaware] agency's conclusions about the claimant's disabled status, opinions regarding a claimants ability to work are administrative findings and as such are reserved to the Commissioner." (Tr. 20, 226, 227-28 and 244.)

In consideration of Andrews' application for Social Security benefits, Dr. Pollner delivered a more cautious response, indicating that Andrews *could work* under certain limited conditions. (Tr. 230-233.) In a "Cardiac Residual Functional Questionnaire," Dr. Pollner opined that Andrews was "capable of low stress jobs," required a sit-stand option, and would need a one-hour break daily as well as the ability to elevate his legs to heart level twice a day for twenty minutes at a time. (Tr. 232.)

Overall, the ALJ reviewed each of the reports reflecting Dr. Pollner's opinions–those prepared for the State of Delaware and that prepared for the Social Security Administration[9]–and found that the limitations *other than* limiting stress and the sit-stand option were not supported by the medical record as a whole. (Tr. 20.)

---

[9] The ALJ considered and assigned little weight to an October 11, 2006, letter stating that Andrews "is significantly disabled because of severe heart disease and should be afforded all the benefits due to him[;]" (Tr. 227-228.) The record does not reveal the intended audience of Dr. Pollner's opinion contained in the "To whom it may concern" letter dated October 11, 2006. (Tr. 227-28.) Andrews' applications for Social Security benefits were not filed until November 22, 2006, over a month and a half after the letter's date. The ALJ considered the letter and, understandably, presumed the letter was written for primary purposes other than securing Social Security benefits. (Tr. 20.)

-10-

(5:09-CV-02117)

### b. **The ALJ Gave Good Reasons for Discounting Dr. Pollner's Overall Opinion**

The ALJ found that Dr. Pollner's opinion was contradicted by substantial evidence in the record as a whole.  The ALJ explained that contrary to Dr. Pollner's *overall* opinion that Andrews could not work,  "[t]he medical record as a whole reflects that when [Andrews] follows his prescribed treatment plan his condition is controlled [and]. . . [n]othing in the medical record, from the perspective of objective medical evidence, supports a conclusion that the claimant could not perform sedentary work with limitations."  (Tr. 20.)  A review of the record shows that substantial evidence supports the ALJ's findings and disproves Andrews' allegations of error.

To support the ALJ's determination that Andrews' heart condition is controlled when he takes his prescription medicine, the ALJ cited to evidence in the record of the adverse effects of Andrews' noncompliance with his prescription medicines and the stability of his condition when he is compliant.  (Tr. 14, 20.)  On September 6, 2006, Andrews was taken to the emergency room due to his heart condition.  (Tr. 174-207, at 185.)  Dr. Palermo, an emergency room physician, authored a consultation report dated September 22, 2006, and stating that over the past few years Andrews' condition had been fairly stable while he was on medications.  (Tr. 185.)  Dr. Palermo noted that Andrews had not taken his medication for the past four days and this caused his condition to worsen.  (Tr. 185.)  On June 13, 2007, in a note summarizing the test results showing improvement of Andrews' condition, Dr. Pollner noted, " [c]hanges represent discontinuation of his usual work activities and the benefit of medications."  (Tr. 247.)  These facts provide substantial evidence in support of the ALJ's determination that "the medical record as a whole reflects that when the claimant follows his prescribed treatment plan his condition is

(5:09-CV-02117)

controlled."  (Tr. 14, 20.)

The ALJ highlighted inconsistencies within Dr. Pollner's own statements regarding Andrews' inability to maintain a full-time position.  For example, in October 2006, Dr. Pollner opined that Andrews "is significantly disabled because of severe heart disease and should be afforded all the benefits due to him."[10]  (Tr. 228.)  In October 2007, however, Dr. Pollner stated that Andrews is "capable of low stress jobs."[11]  (Tr. 231.)  Apart from the lapse of one year, the only difference was Dr. Pollner's audience.  The later evaluation was issued to the Social Security Administration, the former to the State of Delaware.  Substantial evidence supports the ALJ's conclusion that Dr. Pollner's opinion was offset by a deficit of consistency within Andrews' medical record.

The ALJ considered Andrews' testimony about his daily activities and found, by Andrews' own statements, that Andrews was more active than Dr. Pollner had opined.  *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997) ("An ALJ may also consider household and social activities engaged in by the claimant in evaluating a claimant's assertion of pain or ailments."); 20 C.F.R. § 416.929(a).  Andrews testified that "sometimes I make the bed or wash dishes . . . .," can walk a half block,[12] sit for short periods of time, and lift a bag of groceries, depending on the weight of the bag.  (Tr. 18, 33, 35-36.)  Dr. Simon, a consultive

---

[10]  *See*  "To whom it may concern" letter.  (Tr. 228-20.)

[11]  *See* Cardiac Residual Functioning Questionnaire submitted to the Social Security Administration.  (Tr. 230-233.)

[12]  Dr. Pollner opined that Andrews could only walk one quarter of a block.  (Tr. 232.)

-12-

(5:09-CV-02117)

psychological examiner noted that, in response to questioning, Andrews stated that he was able to dress and bath himself, perform simple chores such as washing the dishes and simple house cleaning, in addition to cooking and going to the grocery store.[13]  (Tr. 262.)  There again, Andrews credited himself with greater capabilities than Dr. Pollner

The Sixth Circuit has held that "[t]reating physicians' opinions are only given deference when supported by objective medical evidence."[14]  *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004) (quoting *Jones v. Comm'r Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003)).  Dr. Pollner's conclusory statements declaring Andrews' unable to work or only able to work under very strict limitations are not awarded "any special significance" as such statements by physicians amounting to a disability determination, opposed to a medical opinion, are reserved for the Commissioner.  20 C.F.R. § 404.1527(e)(1), (3); *see also Vance*, 260 Fed.Appx. at 805.

After considering the entire record, the ALJ determined that Dr. Pollner's opinion espoused in the Cardiac Residual Functional Capacity Questionnaire was not entitled to controlling weight.  As Dr. Pollner stated in his progress notes, March 27, 2007: Andrews' cardiomyopathy was "stable."  (Tr. 14, 234.)   The ALJ "assign[ed] weight to the portion of Dr. Pollner's opinion that [Andrews] needs a sit/stand option" to be able to work and found the "remaining limitations [were] not supported by the medical record as a whole, which reveal[ed]

---

[13]  The ALJ's written decision mistakenly refers to Dr. Simon's findings as Exhibit 15F, the correct citation is Exhibit 17F.  (Tr. 16.)

[14]  As explained above, the medical opinions of treating physicians should be given the most weight, *i.e.* "controlling weight," when evaluating conflicting medical opinions of physicians, unless the treating physician's opinion is not well-supported or inconsistent with other substantial evidence in the record.  SSR 06-03p.

-13-

(5:09-CV-02117)

that [Andrews had] remained stable for a decade with exacerbations occurring when [he was] not taking his medications as prescribed."  (Tr. 20.)

The ALJ's written decision details the ALJ's determination of the weight assigned Dr. Pollner's opinion by considering several of the factors stated above, including daily activities, precipitating and aggravating factors, treatment; and the catchall "other factors."  The ALJ was under no legal or regulatory obligation to give great weight to Dr. Pollner's opinions that were not supported by medically acceptable clinical and laboratory diagnostic techniques but rather general assertions.  *See* SSR 96-2p.  (noting controlling weight may not be given to a treating source's medical opinion unless the opinion is well supported by medically acceptable clinical and laboratory diagnostic techniques).  *Id.*

Contrary to Andrews' arguments, the ALJ paid proper deference to Dr. Pollner's role as a treating physician and, in doing so, considered Dr. Pollner's opinions and, ultimately, assigned them the weight they could bear based upon the evidence in the record.  Rather than summarily dismiss Dr. Pollner's overall opinion, the ALJ articulated "good reasons" that are "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight."[15]  Therefore, the ALJ's treatment of Dr. Pollner's reports and findings comports with 20 C.F.R. § 404.1527(d)(2) and SSR. 96-2p.

---

[15] *Compare Wilson*, 378 F.3d at 545 ("To state that Dr. DeWys's opinion 'may be an accurate assessment,' followed by a bald statement of the issue that the ALJ must ultimately resolve, can hardly amount to 'giving good reasons' for rejecting Dr. DeWys's opinion.").

-14-

(5:09-CV-02117)

### B. The ALJ's Step Five Determinations

Andrews contends that the ALJ failed to meet his burden at Step Five to identify "a significant number of jobs in the economy that accommodate the claimant's residual functional capacity and vocational profile" because substantial evidence did not support the ALJ's finding that Andrews was capable of performing jobs that exist in significant number in the regional and national economies.  Specifically, Andrews argues that the ALJ: (1) failed to properly consider Dr. Pollner's limitations in determining Andrew's Residual Functioning Capacity, and (2) "failed to rely on what the [vocational expert] indicated would be tolerated with such limitations."  ECF No. 12 at 11-12.

### 1. Determination of a Claimant's Residual Functional Capacity

Prior to determining whether a claimant is disabled, an ALJ must determine what capacity for work, if any, the claimant has, considering the claimant's proven limitations.  This determination is called the claimant's residual functional capacity (*i.e.* RFC).  The residual functioning capacity determination is proper when based upon "all of the relevant medical and other evidence."  20 C.F.R. § 416.945 (a)(3).  Relative to the sequential outline set forth above, the ALJ determines the residual functional capacity just before deciding whether the claimant can perform his past relevant work (Step Four) and whether there are other jobs in the national economy that the claimant can perform.  A claimant is not disabled if he can perform past relevant work.  At the final step, Step Five, the ALJ considers the claimant's residual functional capacity and his age, education, and work experience to determine whether the claimant may work.  A claimant is disabled if he is unable to work or there are no jobs the claimant is capable

(5:09-CV-02117)

of performing.  *See* 20 C.F.R. § 404.1520(a)(4).

At its most basic level, a claimant's residual functional capacity is simply an indication of

that individual's work-related abilities despite his limitations.  *See* 20 C.F.R. § 404.1545(a)(1).

The residual functional capacity is not a medical opinion, but an administrative determination

reserved to the Commissioner.  *See* 20 C.F.R.§ 404.1527(e)(2).  Accordingly, the ALJ bears the

responsibility for determining a claimant's residual functional capacity, based on all of the

relevant evidence.  *See* 20 C.F.R. § 404.1545(a)(3).

Under 42 U.S.C. § 405(g), the findings of the ALJ are conclusive if they are supported by

substantial evidence.  The substantial evidence standard presupposes that there is a "zone of

choice" within which the Agency may proceed without interference from the courts.  *Mullen*, 800

*F.2d at 545* (quoting *Baker*, *730 F.2d at 1150*).  The ALJ's decision must be affirmed if it is

supported by substantial evidence even if the reviewing court would have decided the matter

differently and substantial evidence also supports a different conclusion.  *See Her*, *203 F.3d at*

*389-90*; *Mullen*, *800 F.2d at 545*.

In the instant case, the ALJ concluded that Andrews had

the residual functional capacity to perform simple, routine sedentary work as
defined in 20 C.F.R. 404.1567(a) and 416.967(a) except that he can lift 20 pounds
occasionally, 10 pounds frequently, stand or walk for 2 hours in an 8 hour
workday, sit for 6 hours in an 8 hour workday, with a sit/stand option and only
occasional changes in the workplace.  (Tr. 17.)

In making that determination, the ALJ considered the medical findings in the record.  He

credited Dr. Simon's conclusion that only "four areas of minimal impairment [] would affect

[Andrew's] ability to work."  (Tr. 21.)  The ALJ explained that Dr. Simon's opinion and the

-16-

(5:09-CV-02117)

record reflect that "the claimant is able to perform sedentary work with acknowledged limitations

from a mental standpoint."  (Tr. 21.)  The ALJ credited Dr. Palermo's opinion that Andrews'

dyspnea and congestive heart failure resulted from Andrews "not [] taking his cardiac medication

for four days."  (Tr. 14.)  The ALJ also credited Dr. Palandijan, State agency medical consultant,

who explained that "despite his allegations, claimant lacks any personal care difficulties, [can]

complete household chores without difficulty . . . [and] should be capable of sedentary activity

with height restrictions."  (Tr. 20, 219.)  Notably, the ALJ partially adopted Dr. Pollner's opinion

in that the RFC included  "that the claimant needs a sit/stand option to be able to perform his

residual functional capacity as assigned"and low stress work.  (Tr. 20, 232.)  The ALJ explained

that,

> Dr. Pollner concluded that the claimant could walk half a block, stand or walk for
> less than 2 hours and sit for 4 hours in an 8 hour day.  The claimant would require
> a job that allowed him to alternate between sitting and standing.  He would need
> unscheduled breaks for an hour to sit quietly and his legs should be elevated twice
> a day for 20 minutes.[16]  (Tr. 19.)

The undersigned's review of the record has revealed that the ALJ's  residual functional

capacity is supported by substantial evidence.

## 2.  The ALJ Properly Relied Upon the Vocational Expert's Testimony

Typically, after the ALJ has determined the residual functional capacity, the ALJ poses a

hypothetical question to a vocational expert to determine if the economy offers jobs that the

hypothetical person (modeled after the claimant's RFC) can perform.  In the instant case, the ALJ

---

[16] As noted by way of correction above, Dr. Pollner found that Andrews could walk one-
quarter of a block; it was Andrews who testified that he could walk a half block.  *Supra* note 13.

(5:09-CV-02117)

posed two hypothetical questions.  The first hypothetical queried whether a person with

Andrews' residual functional capacity as determined by the ALJ could work.  The second

hypothetical queried whether a person with Dr. Pollner's limitations that were not adopted by the

ALJ (*i.e.* needing breaks and missing up to four days of work a month) could work.   The

vocational expert found the person represented in the first hypothetical could work.  The second

could not.

### a.  Hypothetical Based Upon Andrews' RFC as Determined by ALJ

As previously discussed, the ALJ concluded that Andrews has the residual functional

capacity to perform "simple, routine sedentary work, except that he can lift 20 pounds

occasionally, 10 pounds frequently, stand or walk for 2 hours in an 8 hour workday, sit for 6

hours in an 8 hour workday, with a sit/stand option and only occasional changes in the

workplace."  (Tr. 17.)  The first residual functional capacity hypothetical question posed to the

vocational expert incorporated the ALJ's residual functional capacity conclusions such as: "a job

requiring sedentary exertion as defined in the Dictionary of Occupational Title;" a sit/stand

option; and a limitation of "simple, routine jobs" that do not require "learning new things" or

"complex tasks."  (Tr. 47.)  The vocational expert testified that given all the factors that the

hypothetical individual would be able to perform sedentary work as "an addressor–200 jobs in

the regional economy, 575,000 in the national economy; document preparer–200 jobs in the

regional economy, 400,000 jobs in the national economy; and weight tester–650 jobs in the

(5:09-CV-02117)

regional economy and 1.3 million jobs in the national economy."[17]  (Tr. 22, 47-48.)  The ALJ

explained that the vocational expert's testimony is consistent with the Dictionary of Occupational

Titles, as well as the medical record as a whole because "[n]othing in the medical record, from

the perspective of objective medical evidence, supports a conclusion that the claimant could not

perform sedentary work with limitations."  (Tr. 20, 22.)

Because the ALJ's first hypothetical question to the vocational expert reflected the

residual functional capacity supported by substantial evidence, it was not an error for the ALJ to

rely upon the vocational expert's answers to that hypothetical in denying Andrew's claim for

disability benefits.  *See Mitchell v. Comm'r Soc. Sec., 330 Fed.Appx. 563 (6th Cir. 2009).*

### b.  Hypothetical Integrating Dr. Pollner's Limitations

Based upon the vocational expert's answer to the second hypothetical, Andrews' argues

that the ALJ asked "the VE to consider the treating cardiologist's limitations as contained in the

questionnaire he filled out for counsel at Tr. 230-233," and failed to rely on the vocational

---

[17] The Sixth Circuit has explained that,

[t]he vocational expert's testimony is directed solely to whether, given a
claimant's age, experience, and education, along with the ALJ's assessment of
what she 'can and cannot do,' there exist a significant number of employment
opportunities for her in the regional and national economies. The vocational
expert is not expected to evaluate the claimant's medical conditions in making
this determination. Indeed, vocational experts are not required to have any
medical training, so any evaluation of medical evidence they perform would be
outside their area of expertise.

*Webb, 368 F.3d at 632.*

(5:09-CV-02117)

expert's testimony regarding the limitations in the questionnaire.[18]  ECF No. 12 at 11.  In

response to the second hypothetical, the vocational expert answered that Andrews could not

work.  She explained "that [Dr. Pollner's] limitations would preclude competitive work because

first[], the doctor indicated that Andrews could only be in the workplace for six hours a day, and

second[], the likelihood that the Plaintiff would miss four days of work a month was outside the

customary limits permitted by employers."  ECF No. 12 at 11-12; (Tr. 48.)

      As the Sixth Circuit has held, an ALJ is not obligated to consider a vocational expert's

response to questions based on information that the ALJ has decided is not supported by

substantial evidence or is not credible.[19]  *Felisky v. Bowen*, 35 F.3d 1027, 1036 (6th Cir. 1994).

Accordingly, the ALJ was not required to rely on the vocational expert's response to a

---

[18] The transcript reflects that the ALJ asked the vocational expert to consider Dr. Palm's
opinion.  (Tr. 48.)  This reference appears to be a transcription error, as there is no Dr. Palm.  The
record does reflect Drs. Palermo (the emergency room physician) and Dr. Pollner (the treating
physician).  It makes the most sense that the ALJ intended to refer the vocational expert to Dr.
Pollner's opinion and the limitations contained therein.  As described earlier, Dr. Palermo's
opinion significantly regarded the positive effects Andrew's compliance with prescription
medicines had on his health. (Tr. 185.)

[19] The *Felisky* Court explained,

> The ALJ found that Felisky could not perform her past relevant work as a
> registered nurse due to the lifting and bending involved in that job. Accordingly,
> the burden shifted to the Secretary, and the Secretary relies on the testimony of the
> VE to fulfill this burden. The ALJ's first question to Tremblay, the VE, asked
> Tremblay to assume that Felisky's testimony was credible. Tremblay testified that,
> based on Felisky's testimony, Felisky could do no work due to her need to lie
> down or sit in a recliner to relieve pain. Because the ALJ discounted Felisky's
> credibility, however, he did not rely on this portion of the VE's testimony. Instead,
> he asked Tremblay two hypothetical questions. Before reaching the issue of the
> sufficiency of these questions, this court must first determine whether substantial
> evidence exists to support the ALJ's decision to discount Felisky's credibility. *Id.*

(5:09-CV-02117)

hypothetical incorporating limitations not reflected in the ALJ's residual functional capacity. As

previously stated, the ALJ provided good reasons for discounting aspects of Dr. Pollner's opinion

and substantial evidence supported the ALJ's determination in that regard.[20]  Because the ALJ

properly considered and discounted portions of Dr. Pollner's opinion, he was not obligated to

rely on the vocational expert's response to questions that were based upon limitations posed by

Dr. Pollner but not adopted by the ALJ.

### VI.  Conclusion

The Sixth Circuit has firmly upheld that the substantial evidence standard presupposes

that there is a "zone of choice" within which the Agency's "decisionmakers can go either way,

without interference from the courts."  *See Mullen*, 800 F.2d at 545.  The undersigned's review

of the record has found no bases for judicial intervention, as the determinations of the ALJ are

supported by substantial evidence in the record, despite Andrews' contentions to the contrary.

"An administrative decision is not subject to reversal merely because substantial evidence would

have supported an opposite decision."  *Id*. (citations omitted).

For the reasons provided herein, which are based upon the review of the record as whole,

the undersigned Magistrate Judge finds that the ALJ's decision was based upon appropriate legal

standards and supported by substantial evidence.  Accordingly, the undersigned recommends that

---

[20] The Sixth Circuit has found that if a treating source opinion is not given controlling weight, then the ALJ is not required to incorporate limitations found by that treating physician into hypothetical questions posed to a vocational expert. *Infantado v. Astrue*, 263 Fed.Appx. 469, 469 (6th Cir. 2008) ("ALJ was not required to incorporate limitations found by a treating physician into hypothetical questions posed to a vocational expert (VE) in a Social Security disability proceeding where the ALJ's decision to give no weight to the physician's opinion regarding the claimant's limitations was supported by substantial evidence.").

(5:09-CV-02117)

the Agency's final decision denying Plaintiff Robert J. Andrews Disability Insurance Benefits

and Supplemental Security Income be affirmed.


      IT IS SO ORDERED.


November 5, 2010                        /s/ Benita Y. Pearson
Date                                 United States Magistrate Judge


**OBJECTIONS**

      Objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days of receipt of this notice.  Failure to file objections within the specified time waives the right to appeal the District Court's order.  *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).